**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. PX-25-079** |
| | : | |
| **KIMBERLY GOODWIN** | : | |
| | : | |
| **Defendant** | : | |

## MOTION FOR JUDGMENT OF ACQUITTAL

Defendant Kimberly Goodwin through her attorneys William C. Brennan, Jr. and Brennan, McKenna & Lawlor, Chtd. pursuant to Rule 29 of the Federal Rules of Criminal Procedure, moves this Court for judgment of acquittal on all counts of the indictment.

## INTRODUCTION

On August 31, 2026, the jury convicted Kimberly Goodwin of conspiracy to commit wire fraud, money laundering (concealment), and money laundering (criminally derived property over $10,000). The jury's verdict, taken in the light most favorable to the government, was not supported by evidence. Thus, the Court should enter a judgment of acquittal on all counts of the indictment or in the alternative order a new trial pursuant to Federal Rule of Criminal Procedure 33.

## THE CHARGES - CONSPIRACY

*Conspiracy*

Goodwin was convicted of *conspiracy* to commit wire fraud pursuant to 18 U.S.C. § 1349. She was neither charged with nor convicted of wire fraud as a standalone substantive offense, 18 U.S.C. § 1343. So, in addition to demonstrating that the elements of substantive

wire fraud were established beyond a reasonable doubt, *i.e.* a scheme or artifice to defraud, the intent to defraud and the use of wires; the Government must also demonstrate beyond a reasonable doubt that there was a *conspiracy* to do same, *i.e.* two or more persons entered an unlawful agreement with Goodwin and that she knowingly and willfully became a member of the conspiracy.

There was insufficient evidence to prove a conspiracy.

## **ARGUMENT**

*Motion for Judgment of Acquittal – Legal Standard*

An essential of the due process guaranteed by the Fourteenth Amendment is that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 309 (1979). The Court must "determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*, 318-19.

> In so doing, we ask whether the verdict was reasonable, not whether it was correct. We accept any reasonable inferences that support the verdict and resolve any conflict in the evidence in favor of it. The jury can "choose among reasonable constructions of the evidence." Nonetheless, "a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." (Internal citations omitted.)
>
> *United States v. Sanders*, 952 F.3d 263, 273 (5th Cir. 2020)

The verdict in Ms. Goodwin's case rested on mere suspicion, speculation, conjecture, and on an overly attenuated piling of inference on inference.

Any inference must also be reasonable and based upon evidence. "Nonetheless, the jury's inferences must be based on evidence and must be reasonable. ("The jury's role as the finder of fact does not entitle it to return a verdict based only on confusion [or] speculation ...; its verdict must be reasonably based on evidence presented at trial." (Internal citations omitted.) *United States v. Ceballos*, 340 F.3d 115, 125 (2d Cir. 2003)

*Conspiracy – Agreement*

The crime of conspiracy – as opposed to the substantive crime of wire fraud – requires an agreement.

> Agreements need not be spoken or formal, and the Government can use evidence of the conspirators' concerted actions to prove an agreement existed. However, an agreement is a necessary element of conspiracy, and as such, "the Government must prove [its existence] beyond a reasonable doubt." "([T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged."). The Government may establish any element through circumstantial evidence. However, "[p]roof of an agreement to enter a conspiracy is not to be lightly inferred." "Mere similarity of conduct among various persons and the fact that they have associated with or are related to each other" is insufficient to prove an agreement. (Internal citations omitted.)

*United States v. Ganji*, 880 F.3d 760, 767–68 (5th Cir. 2018)

> [T]he crime of conspiracy condemns the agreement itself... "[T]he agreement itself is the criminal act." Without an agreement, there is no conspiracy. Conspirators do not enter into an agreement by happenstance, and because an agreement is the essential element of conspiracy, an agreement to commit a crime cannot be lightly inferred. "[E]ach party must have intended to enter into the agreement and the schemers must have had a common intent to commit an unlawful act. (Internal citations omitted.)

*Id.*

In *Ganji* the government had no direct evidence of a conspiracy and instead argued that circumstantial evidence proved a concert of action from which the jury could "infer" an agreement. The Court pointed out that "in the vast majority of concert of action cases, the Government presents an insider with direct evidence of the conspiratorial scheme who testifies to the individual actions she completed and the actions the individual took to meet their common unlawful goal. Usually, the Government presents a co-conspirator who was involved in the specific conspiracy charged" *Id.* 771. In *Ganji* - as in Goodwin - no such person exists. There is significantly less evidence of an agreement in Goodwin than there was in *Ganji*.

*Two Separate Conspiracies: Lost Time and Good Leaders*

The government in its charging decision elected to break the conspiracy charged in Count One into two distinct parts – conspiracy involving lost time and conspiracy involving Good Leaders. The indictment charges at paragraph 3.a. of Count One, that Goodwin "devis[ed] an unauthorized lost time policy and approv[ed] awards under it which are either outside of the terms of that policy and/or are based on falsely inflated hours."

As a separate – but not linked – conspiracy the indictment charges at paragraph 3.b. of Count One, that Goodwin "devis[ed] an unauthorized agreement with Good Leaders and ma[de] payments pursuant to that agreement which are either outside the terms of that agreement and/or are based on falsely inflated hours or non-existent services."

These two conspiracies are not linked in as much as neither is alleged to be dependent on or supportive of the other. The lost time conspiracy is a standalone conspiracy not alleged to be related to, or supporting, or dependent on the Good Leaders conspiracy.

*Lost Time – No Agreement*

No witness testified that there was any conspiratorial agreement concerning lost time paid by Local 2419. There was no live testimony from a coconspirator or any hearsay conspiratorial admissions from a coconspirator. No written or electronic evidence evinced any overt agreement between Goodwin, Kelleigh Williams or Donnell Griffin. In the absence of direct or circumstantial evidence, the Government seeks to rely on "inferences." The Government presented evidence through agent Jodi Danks that the U.S. Department of Labor considers lost time to be appropriate payments by a Union.[1] There is non-mandatory guidance concerning lost time on the Department of Labor web site. Agent Danks admitted that the lost time policy was correctly drafted by Goodwin. Agent Danks then opined that the policy was - in her nonexpert opinion – "implemented incorrectly." Importantly there was no evidence that either Goodwin, Williams or Griffin were not entitled to lost time payments or that the payments were not earned – only that the payments may not have been done "correctly."

But most importantly for this analysis is that the lost time payments to Goodwin were presented to and approved by the Executive Board of the Union on four separate occasions. And those approvals were made by Union members other than Williams and Griffin. (Government Exhibit 5.) Mere supposed incorrect implementation is not evidence of an agreement that would support a charge of conspiracy.

[1] This testimony was elicited from Agent Danks during cross-examination on day three of the trial.

Most importantly there was absolutely no evidence of any linkage between the lost time payments and the Good Leaders agreement and payments. No evidence – either direct or circumstantial - linked the two alleged conspiracies. The Government relies on a "mere inference" that there was an agreement linking the lost time payments and Good Leaders.

*Good Leaders – No Agreement*

Likewise, there was no direct or circumstantial evidence of a conspiracy between Goodwin, Williams, or Griffin concerning Good Leaders.

- Neither alleged coconspirator –Williams nor Griffin – testified that there was a conspiracy or an agreement on either lost time or on Good Leaders.
- There were no coconspirator hearsay statements from either Williams or Griffin that established a conspiracy either lost time or on Good Leaders.
- There were no writings demonstrating a conspiracy either lost time or on Good Leaders.
- There were no voice mail messages demonstrating a conspiracy either lost time or on Good Leaders.
- There were no email messages demonstrating a conspiracy either lost time or on Good Leaders.
- There were no text messages demonstrating a conspiracy either lost time or on Good Leaders.
- Only Goodwin was an owner of Good Leaders. Neither Williams nor Griffin played any role in the establishment of Good Leaders.

- Only Goodwin was a signatory on the bank account of Good Leaders. Neither Williams nor Griffin could conduct financial transactions on behalf of Good Leaders.
- No money from Good Leaders flowed to either Williams or Griffin – not from Good Leaders directly, not from Goodwin's bank accounts, not from Kevin Bryan's bank account, not from Walter Bryan's bank account.
- There was absolutely no evidence that either Williams or Griffin had any "stake" of any kind whatsoever in Good Leaders.

Having failed to produce direct or circumstantial evidence of an agreement between Goodwin, Williams and Griffin concerning Good Leaders, the Government again relies on an "inference" that there was an unlawful agreement. An inference is not enough.

> The central feature of a conspiracy is the agreement, but it doesn't need to be formal or even spoken. It can "be inferred from concert of action." Even so, the agreement "cannot be lightly inferred." "Mere similarity of conduct among various persons and the fact that they have associated with or are related to each other is insufficient," standing alone, "to prove an agreement." (Internal citations omitted.)

*United States v. Sanders*, 952 F.3d 263, 274 (5th Cir. 2020)

*United State v. Ceballos*, 340 F.3d 115 (2nd Cir. 2003) is also illustrative of this point. There Ceballos was charged with two separate conspiracies: conspiracy to bribe a public official and conspiracy to distribute heroin and cocaine. The Court ruled that there was insufficient evidence of conspiracy to bribe a public official because there was no linkage.

> However, "knowledge of the existence and goals of a conspiracy does not of itself make one a coconspirator." "There must be something more than [m]ere knowledge, approval of or acquiescence in the object or the purpose of the conspiracy," the defendant's "attitude towards the forbidden

> undertaking must be more positive.... he must in some sense promote their venture himself, make it his own, have a stake in its outcome," or make "an affirmative attempt to further its purposes," (the evidence must show that "[t]here is ... more than knowledge," that "[t]here is informed and interested cooperation"). "Furthermore, to establish the intent, the evidence of knowledge must be clear, not equivocal." (Internal citations omitted.)

*United States v. Ceballos*, 340 F.3d 115, 124 (2d Cir. 2003)

Both *United States v. Ganji*, 880 F.3d 760 (5th Cir. 2018) and *United States v. Ceballos*, 340 F.3d 115 (2d Cir. 2003) support the legal proposition that there must be evidence – as opposed to mere inferences – from which a jury could conclude beyond a reasonable doubt that there was an agreement legal constituting a conspiracy.

*Money Laundering - Concealment*

Money laundering pursuant to 18 U.S.C. § 1956 requires evidence of concealment.

To sustain a conviction under § 1956(a)(1)(B)(i), the government must plead and prove that a defendant:

> (1) knew the property involved in a financial transaction represented the proceeds of some unlawful activity;
> (2) conducted or attempted to conduct a financial transaction which involved the proceeds of unlawful activity; [and,]
> (3) knew the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds from the unlawful activity.

*United States v. Dimeck*, 24 F.3d 1239, 1242 (10th Cir. 1994)

First, there was insufficient evidence that the monies were proceeds of an unlawful activity. As important, there was no evidence of concealment by Ms. Goodwin. The bulk of the monies that flowed from the Good Leaders bank account were deposited directly in either Ms. Goodwin's personal bank account or a joint bank account that she shared with

her brothers. There can be no credible argument that anyone examining the Good Leaders bank account could fail to ascertain – at an initial review - that Good Leaders money was flowing to Ms. Goodwin. There was absolutely no effort to conceal where the bulk of the money was going. The money laundering statute requires more. See, *United States v. Dimeck*, 24 F.3d 1239 (10th Cir. 1994); *United States v. Garcia–Emanuel*, 14 F.3d 1469 (10th Cir.1994); *United States v. Lovett*, 964 F.2d 1029 (10th Cir. 1992).

*Money Laundering - Criminally Derived Property over $10,000*

Although a violation of 18 U.S.C. § 1957 does not require evidence of concealment, it does however, require evidence of criminally derived property. The monies derived from the lost time payments and Good Leaders are not criminally derived property. As discussed above there was insufficient evidence to conclude that there was a conspiracy to violate 18 U.S.C. § 1349.

## **CONCLUSION**

For all of the foregoing reasons, the Court should grant a judgment of acquittal on all counts or, at a minimum, grant a new trial.

September 3, 2026

Respectfully submitted,

/s/

William C. Brennan, Jr.
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301-474-0044
wbrennan@brennanmckenna.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 3, 2026, a copy of the foregoing was sent to counsel for the Government via ECF.

/s/
William C. Brennan, Jr.