**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**KIMBERLY GOODWIN,**<br><br>**Defendant.** | **Hon. Paula Xinis**<br><br><br><br>**Case No. 25-CR-79-PX** |

**UNITED STATES' RESPONSE IN OPPOSITION TO MOTION FOR ACQUITTAL BY DEFENDANT KIMBERLY GOODWIN PURSUANT TO RULE 29**

On August 26, 2026, the Government rested its case-in-chief in this matter. Defendant Kimberly Goodwin moved under Rule 29 of the Federal Rules of Criminal Procedure at that time. The Court deferred any decision on that motion and requested briefing.

## Procedural Background

On March 27, 2025, a grand jury sitting in Greenbelt, Maryland returned a 9-count Indictment against the defendant.

The Indictment charged the defendant with Wire Fraud Conspiracy in violation of 18 U.S.C. §§ 1343 and 1349 (Count One), alleging that the defendant engaged in a scheme to defraud American Federation of Government Employees (AFGE) Local 2419. It also charged Money Laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts Two through Four) and 18 U.S.C. § 1957 (Counts Five through Nine) related to financial transactions and cash withdrawals made with the wire fraud proceeds.

From August 24, 2026, to August 31, 2026, this Court held a jury trial on the Indictment. On August 27, 2026, after the close of the government's case-in-chief, Defendant

orally moved for a judgment of acquittal on all counts. After hearing argument, the court deferred decision and requested briefing on the motion.

On August 31, 2026, the jury found Defendant guilty of Counts One through Nine in the Indictment. On September 3, 2026, Defendant filed a formal motion for acquittal under Rule 29 (Dkt. # 81).

NOW comes the United States, by its counsel David Jaffe, Chief, Violent Crime and Racketeering Section, which opposes such motion, and shows as follows:

**Legal Standard**

Federal Rule of Criminal Procedure 29(c) allows a defendant to renew a motion for judgment of acquittal after a guilty verdict. The trial court should deny the renewed motion if, "viewing the evidence in the light most favorable to the government, *any* rational trier of facts could have found the defendant guilty beyond a reasonable doubt." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). In its review, the trial court should not consider "the credibility of witnesses, but must assume that the jury resolved all contradictions in favor of the Government." United States v. Romer, 148 F.3d 359, 364 (4th Cir. 1998), cert. denied, 525 U.S. 1141 (1999).

Thus, in assessing a motion for acquittal, the trial court must consider "whether any rational jury" could find defendant guilty beyond a reasonable doubt. United States v. Hicks, 64 F.4th 546, 550 (4th Cir. 2023). The court must consider direct and circumstantial evidence, along with all reasonable inferences drawn from the evidence. See United States v. Franklin, 227 F. App'x 267, 268 (4th Cir. 2007). That admonition reflects a deep respect for the fact-finding function of the jury. United States v. Moye, 454 F.3d 390, 394 (4th Cir.2006) (en

banc) (holding that trial court "can reverse a conviction on insufficiency grounds only when the prosecution's failure is clear.")

## Argument

### I. Count One: Wire Fraud Conspiracy

Defendant fails (Motion, pp. 4-8) to contest that sufficient evidence was presented to convict her of completed wire fraud. Instead, Defendant argues that insufficient evidence exists in the record that either Kelleigh Williams or Donnell Griffin conspired with Defendant to commit wire fraud. This challenge presents an especially high bar for Defendant as applicable law only requires that two persons conspired to violate the wire fraud statute as alleged in Count One. Thus, if the jury could reasonably conclude that either Williams or Griffin conspired with the defendant to commit the offense pursuant to either the Lost Time or Good Leaders objective, Defendant's argument must fail.

In any event, the jury's verdict on the conspiracy alleged in Count One was well supported by direct and circumstantial evidence, including statements made by Williams and Griffin during, and in furtherance, of the conspiracy.

#### A. Lost Time Policy Objective

Both Williams and Griffin applied to Defendant Goodwin and received more than $44,000 each in payments in Lost Time payments from 2017 through 2022. (Govt Exh. 100). Those suspect payments were made crucially during the period when Williams and Griffin were eligible to receive for Official Time from the NIH for any representational duties (Govt Exh. 4, pp. 28-29). In addition, both Williams and Griffin received unauthorized payments for Lost Time during the same period when Goodwin was taking more than $877,000 from the Local 2419 treasury using the Good Leaders scheme. Prior to December 2018, Williams

and Goodwin were signatories who controlled the Local 2419 bank account and thus acted together with Goodwin to pay out Lost Time requests made by herself, Goodwin, and Griffin. Since Goodwin retained sole signatory authority over the Local 2419 treasury after December 2018, the lions' share of the requests by Williams were necessarily paid out by Goodwin. The record thus demonstrates that Williams acted in concert with Goodwin in approving all her Lost Time requests, as well as Goodwin's own sizable requests (Govt Exh. 7b, 7c, Govt Exh. 100).

The record shows that Williams and Griffin both also made implausible claims for Lost Time, nonetheless, approved and paid by Goodwin. For example, Williams made Lost Time requests to Goodwin for more than 80 hours per month for several months for which Goodwin issued payment (Govt Exh. 11, 21). The requests made by Williams and Griffin and paid out by Goodwin, moreover, violated several provisions in the AFGE Standard Local Constitution, the Local 2419 by-laws, and the Lost Time Policy. All those provisions were known to Williams and Griffin, having served as officers in Local 2419 for several years prior. For example, the Lost Time Policy specifies that all requests must be made before Lost Time is incurred (Govt Exh. 9). All of Williams' requests to Goodwin, however, were made well after the date of the claimed Lost Time had passed. (Govt Exh. 11).[1]

Most importantly, the record showed that the Lost Time Policy was not approved by the Local 2419 membership before Goodwin began approving payments pursuant to it to herself, Williams, and Griffin in March 2017 (Govt Exh. 5, 7g). Moreover, none of the

[1] The jury also could reasonably infer that Williams submitted falsified inflated lost time requests to Goodwin for payment given her history of submitting plainly false requests for Official Time. For example, Williams claimed that she met with attorneys over "grievances" all day for several days spanning several months at a time (Govt Exh. 26).

multiple Lost Time requests submitted by Williams and Griffin were submitted to the Local 2419 membership for approval as required by the $500 per month rule in the Standard AGFE Constitution and Local 2419 By-laws written by Williams and Goodwin. (Govt Exh. 2, p. 5, Govt Exh. 3, p. 5). Thus, Goodwin, Williams, and Griffin were each aware that their claims should be approved by the Local 2419 membership, but took Lost Time payments for several years without approval, and without knowledge of the membership.

In her motion, Defendant argues (Motion, p. 5) that the Local 2419 meeting minutes indicate that Lost Time awards were approved in all four membership meetings in 2018. That Lost Time awards were discussed in meetings solely in 2018 only creates an inculpatory contrast with the succeeding years: In March 2019, Goodwin subsequently cancelled membership meetings altogether, and Griffin failed to hold any meetings through June 2022. The entries in the minutes to which Defendant refers, moreover, do not indicate what she contends they do. Those mentions of Lost Time awards were made during *Executive Board* meetings, and not meetings of the Local 2419 membership. (Govt Exh. 5, pp. 57, 65, 71, 75).

Finally, Williams and Griffin's failure to maintain and/or produce any records that would support their excessive payments under the guise of the Lost Time Policy—though they were obligated to do so under the AFGE Constitution and federal law—creates a reasonable inference that they sought to conceal those payments. The record revealed that Goodwin's fraudulent use of the Lost Time Policy would not have been possible in the first instance had Williams and Griffin observed their requirements under the AFGE Constitution and/or federal law. Those requirements were:

1) to hold quarterly meetings of the Local 2419 membership which would require a financial report;

2) to draft and gain approval from the Local 2419 membership for an annual budget;

3) to submit all expenditures greater than $500 per month to the Local 2419 for approval;

4) to hold the required officer elections in 2021;

5) to file annual LM-3 financial reports with the Department of Labor; and

6) to maintain sufficient records to support the financial activities of Local 2419 deliver them to the AFGE authorities and the Department of Labor when requested.

The evidence demonstrated that observance of any of those obligations by Williams or Griffin at any point would likely have defeated the scheme immediately. By consciously abdicating the fiduciary duties of their office (while continuing to reap financial benefits), Goodwin, Williams, and Griffin created a veil of secrecy surrounding Goodwin's fraudulent machinations. A rational juror could infer from that secrecy a design to hide the conduct from the Local 2419 membership, other officers in Local 2419, and District 14 of the AFGE.[2]

**B. The Good Leaders Objective**

Defendant's arguments (Motion, pp. 6-8) concerning Williams and Griffin's involvement in the Good Leaders arrangement studiously avoid the entire record. Defendant claims that no writings exist demonstrating a "conspiracy or agreement" regrading Good Leaders. To the contrary, Donnell Griffin signed the Good Leaders "Agreement" proffered

[2] Compare United States v. Colton, 231 F.3d 890, 898 (4th Cir.2000)("Even in the absence of a fiduciary, statutory, or other independent legal duty to disclose material information, ... acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to prevent the other party from acquiring material information" can comprise material misrepresentation or concealment of fact"); United States v. Shamy, 656 F.2d 951, 957 (4th Cir. 1981) ("Any breach of a fiduciary duty by a corporate employee effected in part by the use of the mails may be a violation of the federal mail fraud statute, at least when accompanied by concealment or a failure to disclose relevant and material information.").

by Goodwin establishing its claimed relationship with Local 2419 (Govt Exh. 14). While Jury Instruction No. 34 correctly directed that no formal or express agreement is required to establish a conspiracy, the record in this case contains the extraordinary feature of a literal "agreement" signed by Griffin establishing the vehicle for Goodwin to empty the Local 2419 without providing anything in return. Griffin's act of signing over control of Local 2419 in his first act as president may be regarded as an indicia of bad faith by a rational factfinder.

Defendant similarly argues (Motion, p. 6) that no emails exist that could reasonably establish either Williams' and/or Griffin's involvement to the Good Leaders scheme. On the contrary, Goodwin sent a series of emails to both Williams and Griffin both extending the terms of the original Good Leaders arrangement and escalating her financial demands upon the Local 2419 treasury. Williams and Griffin readily agreed to those demands without exception, including an immediate payment of $162,500 to Goodwin in October 2020 (Govt Exh. 15, 30, 46, p. 3). Both Williams and Griffin also received Good Leaders' weekly invoices via email, which contained obvious and outrageous falsehoods including that she spent more than 130 hours per week for an entire year working on Local 2419 matters. (Govt 17-20).

Griffin, as the highest officer in Local 2419, did nothing after receiving invoices by email from Goodwin for more than $877,000, though he had been an officer in Local 2419 for many years and was aware of its very modest financial obligations (Govt Exh. 5, 24c). For her part, Williams affirmatively and dutifully noted each weekly payment to Good Leaders in the Local 2419 ledger for 2019, indicating her approval as Secretary-Treasurer and Goodwin's approval as Local 2419 president after August 2019 (Govt Exh. 8c).

Several other aspects of the Local 2419 ledgers permit an inference that Williams continued to assist Goodwin despite knowing the Good Leaders arrangement was not above board. The hundreds of payments to Goodwin noted in the Local 2419 ledgers for 2019 and 2021 do not indicate they were for Good Leaders or for Goodwin personally. Instead, Williams noted each and every payments with the opaque and deceptive designation "contract enforcement—staff." (Govt Exh. 8c and d). In the ledger for 2021, Williams notes that Goodwin herself approved the payments to her as "president" in lieu of Griffin (Govt Exh. 8d). Williams, moreover, failed to produce a similar ledger for 2020—the year Goodwin took more than $500,000 from Local 2419—though the Labor Department investigator requested it several times. A reasonable juror could infer that Williams either withheld, destroyed, or failed to maintain the ledger as required.

As noted above, the abandonment of their duties as officers by Williams and Griffin and conspiracy of secrecy was critical to the success of the Good Leaders scheme. Any public activity within Local 2419—a membership meeting, scheduling of elections, a financial report—would undoubtedly have revealed this fraudulent arrangement. Williams and Griffin's willingness to join this conspiracy of silence is even more damning than the one surrounding the receipt of Lost Time payments.

Thus, the $877,000 of Local 2419 funds reaped by Goodwin through the Good Leaders dwarves the $133,000 in unauthorized Lost Time awards (Govt Ex. 100), yet no records referencing "Good Leaders" were generated by Williams or Griffin and presented to the membership. Indeed, none of the five (5) lay witnesses at trial had ever even heard of Good Leaders until Goodwin had bankrupted Local 2419 and the investigations began. (Transcript of August 25, pp. 77, 154, 173-74, 226, 237; Transcript of August 27, pp. 52-57). See United

States v. Maddux, 917 F.3d 437, 446 (6th Cir. 2019) (recognizing that efforts to conceal unlawful activity can be a basis to infer a fraudulent intent).

Williams and Griffin's stonewalling during those investigations further establishes their dedication to keep the alleged scheme a secret from both the AFGE and the Department of Labor. Neither was forthcoming with basic records of Local 2419 they were legally obligated to maintain, and each made demonstrably false statements to AFGE business representative Peter Winch during his inquiry. Williams told Winch that the Department of Labor had taken all the Local 2419 records while she was simultaneously telling Investigator Jody Danks that she would soon provide her the records (Transcript of August 26, p. 53-54, 62-63). For his part, Griffin told Winch that he "had not been able to hold a [membership meeting]" and denied he had ever seen the Good Leaders agreement, though he had signed and initialed that agreement several times. (Transcript of August 27, pp. 52-57, 80-81). See United States v. Burfoot, 899 F.3d 326, 334 (4th Cir. 2018) (observing crediting of witnesses is province of jurors and trial court "must assume the jury resolved all contradictions in testimony in the government's favor.").

### C. The Defendant's Remaining Arguments on Count One are Without Merit

**1.** Defendant erroneously describes (Motion, p. 4-6) the two objectives of the alleged conspiracy in Count One as "standalone" conspiracies without any relation to one another. Count One charges a single conspiracy of attempting to defraud Local 2419 of its funds though the concerted activity of Goodwin and/or Williams and Griffin. Both objectives, moreover, charge that same persons with defrauding the same victim, Local 2419, using the same basic scheme—claiming compensation for union work not performed. If Defendant sought to challenge whether the Indictment improperly charged multiple conspiracies, the appropriate

vehicle was a motion to dismiss. Motions under Rule 29 must be grounded solely upon sufficiency of the Government's evidence at trial.

**2.** Citing United States v. Ganji, Defendant argues (Motion, p. 4) that no member of the alleged conspiracy in Count One testified at trial. While conceding that live testimony from a coconspirator is not required, Defendant maintains that that absence reveals a fatal shortfall of evidence on the part of the prosecution. In Ganji, the defendant, a doctor, replaced a former doctor in a practice who had been fraudulently referring patients for home healthcare through a particular agency. Dr. Ganji continued to refer patients through the same agency, but no evidence existed that she was aware of the prior doctor's the referrals were falsified. Ganji also testified concerning her lack of knowledge of the scheme prior to assuming her position with the practice and going forward. Under those circumstances, the parallel actions of the former doctor and Ganji using the same agency to make referrals was insufficient to sustain the burden to demonstrate a conspiracy between Ganji and the former doctor or the referral agency. 880 F.3d 760, 772 (5th Cir. 2018) (rejecting government's well-rebutted argument "that because Dr. Murray held the same position as Dr. Ganji, they must have conducted their practices similarly.").

The decision in Ganji is inapposite. Here, the Government has made no contention that any parallel actions of Williams and Griffin alone link them to Goodwin's scheme. Here, the jury reviewed substantial evidence that both Williams and Griffin were fully aware of both the Lost Time and Good Leaders objectives of Goodwin's scheme and offered critical assistance to her in carrying out that scheme. The absence of insider testimony in Ganji is likewise not comparable to the record herein. While neither Williams nor Griffin testified in this matter, their statements in furtherance of the conspiracy outlined above (pp. 8-9) were

admitted into evidence and the jury was free to consider them as confirming their connection to and participation in the alleged scheme.

3. Defense counsel reprises (Motion, p. 6) his closing argument that neither Williams nor Griffin may be considered coconspirators because they "lack[ed] a stake" in the Good Leaders scheme. However, as Jury Instruction No. 35 states, a conspirator need not have a financial interest in the success of the scheme. Moreover, as the evidence demonstrated, both Williams and Griffin did have a financial stake in the alleged conspiracy in Count One, having taken thousands of dollars in unauthorized and inflated Lost Time payments.

**II. Counts Two through Four: Concealment Money Laundering**

Defendant argues (Motion, p. 8) that the monies taken by Goodwin through Good Leaders cannot support a money laundering conviction because there was insufficient evidence of underlying specified unlawful activity. Counts Two through Four, however, allege that the specified unlawful activity in those counts is "wire fraud in violation of 18 U.S.C. § 1343," and not conspiracy to commit wire fraud. See Indictment, p. 15. Defendant, moreover, has essentially conceded that sufficient evidence supports the conclusion that she committed wire fraud, challenging only the jury's determination that she conspired with Williams or Griffen to do so.

Defendant further argues (Motion, p. 8) that insufficient evidence supports the conclusion that she laundered the $257,000 alleged in Counts Two through Four because she moved the bulk of the funds from Good Leaders directly into her personal account. Defendant thus asserts that her apparent inaction in concealing the majority of those funds defeats any reasonable inference that she intended to conceal the $257,000 at issue.

To the contrary, the record contained sufficient evidence that Goodwin sought to conceal that $257,000 through rapid and duplicated transactions, unnecessary use of cash, assistance of close associates, absence of any alternative purpose for those transactions, and especially, no diminishment in funds reaching her personal account. See United States v. Bolden, 325 F.3d 471, 490 (4th Cir. 2003) (noting inference when defendant transfers proceeds into control of others whom offender "has a very close relationship").

That Defendant did not funnel all of the Good Leaders proceeds through various accounts permits the opposite inference from what she contends: That she could have deposited all the funds taken from Good Leaders directly into her account but consciously chose to undertake the unnecessary transactions to conceal the $257,000 at issue. See United States v. Willey, 57 F.3d 1374, 1387 (5th Cir. 1995) ("[A] transfer from one third party to another supports a reasonable inference of a design to conceal because it moves the money further away from the defendant than it was before the transfer.").

### III. Counts Five Through Nine: Money Laundering Transactions Over $10,000

Here again, Defendant challenges (Motion, p. 9) her convictions by arguing that the proceeds from the scheme alleged in Count One are not derived from a conspiracy to commit wire fraud under 18 U.S.C. § 1349 due solely to lack of coconspirators. Counts Five through Nine, however, identify the specified unlawful activity as completed "wire fraud" in violation of 18 U.S.C. § 1343. Her failure to challenge whether she committed wire fraud—and that the money she gained from the Good Leaders scheme were the proceeds of wire fraud—negates this argument.

## **Conclusion**

WHEREFORE, the Government respectfully requests that the Court deny Defendant Goodwin's motion to for acquittal pursuant to Rule 29.

Respectfully submitted,

DAVID JAFFE
CHIEF, VIOLENT CRIME AND
RACKETEERING SECTION

By: /s/______________________________
VINCENT FALVO
BEN TONKIN
Trial Attorneys
United States Department of Justice
1301 New York Avenue, NW
Washington, D.C. 20530
vincent.falvo@usdoj.gov
ben.tonkin@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on September 10, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.

By: /s/______________________________
VINCENT FALVO
Acting Deputy Chief