IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. PX-25-079** |
| | : | |
| **KIMBERLY GOODWIN** | : | |
| | : | |
| **Defendant** | : | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR JUDGMENT OF ACQUITTAL**

Defendant, Kimberly Goodwin, replies to the Response filed by the Government. [ECF # 82] The major thrust of Goodwin's Motion for Judgment of Acquittal [ECF # 81] was that there was insufficient evidence of a *conspiracy* to commit wire fraud – as opposed to the *substantive* crime of wire fraud. The focus of the motion was on a lack of evidence to support the impermissible inferences claimed by the Government.

Importantly, the indictment alleges at paragraphs 3(a) and 3(b) on page 8 that *only* "Defendant Goodwin and coconspirator one" were involved in the wire fraud scheme to defraud. Coconspirator one is Kelleigh Williams. The indictment does *not* allege that coconspirator two, Donnell Griffin, was involved in the scheme to defraud alleged in paragraphs 3(a) and 3(b). However, in responding to Goodwin's Motion for Judgment of Acquittal the Government argues that it is sufficient for the jury to conclude that *either* Williams or Griffin conspired with Goodwin. And despite breaking the scheme to defraud into two distinct but not related schemes the Government argues that the jury could conclude that proof of *either* part was sufficient to convict on the single scheme to defraud. The government fails to cite a single case for this proposition and thus ignores the well-

established dictates of *Kotteakos v. United States*, 328 U.S. 750, 772 (1946). ("The indictment charged a single conspiracy only; the proof showed more than one.")

The Government's case was impermissibly based on inference piled on inference – rather than inference based upon evidence. *United States v. Sanders*, 952 F.3d 263, 273 (5th Cir. 2020), ("a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference.")

The Government's response illustrates this point. When describing the $44,000 in Lost Time payments each to Williams and Griffin from 2017 through 2022, the Government categorizes all of these payments as "suspect payments." (p. 3.) Suspicion is not evidence. The Government labels the entire amount of $44,000 each as "suspect" claiming all of, "[t]hose suspect payments were made crucially during the period when Williams and Griffin were eligible to receive for Official Time from the NIH for any representational duties." (p. 3.) Williams and Griffin were clearly eligible for some of these Lost Time payments because they reflect time Williams and Griffin spent on internal union business – time not covered by the Official Time policy of NIH. Thus, the Government has misconstrued the implementation of the Official Time Policy by calling Lost Time payments to Williams and Griffin "suspect."

Continuing with this theme the Government claims that Williams and Griffin both also made "*implausible claims*" for Lost Time. This statement is mere argument – not evidence. (p. 4.) The Government further claims that Williams and Griffin violated several provisions in the AFGE Standard Local Constitution, the Local 2419 by-laws, and the Lost Time Policy. Per the Government all those provisions "*were known* to Williams and

Griffin" supposedly because of their former roles as officers. However, there was no testimony that Williams and Griffin actually "*knew*" these provisions applied – just argument by the Government. (p. 4.) Yet, Agent Danks testified that Lost Time was not specifically mention in either the AFGE Standard Local Constitution or the Local 2419 by-laws How could Williams and Griffin "know" about a policy that was not mentioned in either the AFGE Standard Local Constitution or the Local 2419 by-laws? Likewise footnote 1 refers to False Time claims as "*plainly false requests*" for Official Time. (p. 4. Fn. 1) Again, this is mere argument – not testimony.

In fact, there was absolutely no testimony that Griffin ever intentionally took Lost Time payments that he was not entitled to take. And interestingly, the Government neglects to mention that several other members of the Executive Board also received Lost Time payments. Again, these Lost Time payments were voted on by the Executive Board as reflected in the minutes of the Executive Board – which were available to the membership. (Govt. Exhibit 5.) At least six members of the union (in addition to Goodwin, Williams and Griffin) were clearly aware of the Lost Time payments because they received Lost Time payments as memorialized in the evidence. (Govt. Exhibit 100.)

The Government further claims that Goodwin, Williams, and Griffin "were each aware" that their claims should be approved by the Local 2419 membership. (p. 5.) Again there was no testimony from Goodwin, Williams, and Griffin – or anyone else – that they were "each aware." This is only argument – not testimony, emails, etc.

The Government further argues that in " March 2019, Goodwin subsequently cancelled membership meetings altogether, and Griffin failed to hold any meetings

through June 2022." (p. 5.) There was no testimony that Goodwin "cancelled" meetings – only that none were scheduled after April 2019, and the time that she resigned as president of Local 2419 in August 2019. There was no testimony why Griffin failed to schedule meetings. Argument should not be confused with evidence.

Finally, the government argues Williams and Griffin's failure to maintain and/or produce any records that would support their excessive payments under the guise of the Lost Time Policy creates a reasonable inference that they sought to conceal those payments. However, there was no testimony that Williams and Griffin intentionally – as opposed to negligently - failed to produce the records. Importantly the evidence indicates that Goodwin made two separate efforts producing union records to Agent Danks.

Further use of language such as, "would *likely* have defeated the scheme immediately." (p. 6.) Or "*may be regarded* as an indicia of bad faith by a rational factfinder" are likewise suppositions – not facts. (p. 7.) "Likely have defeated" and "indicia of bad faith" are argument – not facts or testimony.

The Government claims that weekly invoices sent via email, which contained "obvious and outrageous falsehoods" including that she spent more than 130 hours per week for an entire year working on Local 2419 matters. (p. 7.) There was no testimony that the invoices contained "obvious and outrageous falsehoods." Again, this is argument - not testimony. Clearly the testimony of NIH employee Katrina Branch and union lawyer Erica Dorsey demonstrate that Goodwin devoted time to performing union business while she was at Good Leaders. Most importantly both Branch and Dorsey knew that Goodwin was no longer employed by NIH and thus was not a member of Local 2419. They both knew

that Goodwin was working for Local 2419 as a union *employee* - not as a union *member* and was performing union work.

The Government argues that “none of the five (5) lay witnesses at trial had ever even heard of Good Leaders until . . . the investigations began. (p. 8.) That claim misconstrues the testimony. As stated above two of those five lay witnesses, Branch and Dorsey, while not knowing “Good Leaders” by name, knew that Goodwin was performing union work while not an NIH employee or a member of Local 2419. Further, Union members David Cumber and Tommy Sanchez were not active in union business during the applicable time frame. Cumber also acknowledged dealing with non-union employee Maria Wilson, who worked for Good Leaders. The Government conveniently ignores the knowledge of the other 100+ union members they chose not to call as witnesses.

The claim that the “arrangement was not above board” is argument – not evidence. (p. 8.) Also, the claim that a membership meeting, scheduling of elections, a financial report – “would *undoubtedly* have revealed this fraudulent arrangement” is argument – not evidence. (p. 8.)

The claim that the jury reviewed substantial evidence that “both Williams and Griffin *were fully aware of both the Lost Time and Good Leaders objectives*” of Goodwin’s scheme and offered critical assistance to her in carrying out that scheme is totally unsupported by evidence. (p. 10.) There was absolutely no testimony that Williams and Griffin *were fully aware* of anything. That is pure unadulterated speculation – “mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference.” *United States v. Sanders*, supra.

The litany of argumentative phrases used by the Government:

- *suspect* payments
- *implausible* claims
- *plainly* false requests
- each were *aware*
- would *likely* have defeated
- *obvious and outrageous* falsehoods
- arrangement was *not above board*
- would *undoubtedly* have revealed

reveals the paucity of actual evidence presented by the Government. If the Government had evidence – as opposed to phraseology – they would have cited it. Instead, the Government relies impermissibly on inference piled on inference – rather than inference based upon evidence.

**CONCLUSION**

For all of the foregoing reasons, the Court should grant a judgment of acquittal on all counts or, at a minimum, grant a new trial.

September 14, 2026

Respectfully submitted,

/s/

William C. Brennan, Jr.
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301-474-0044
wbrennan@brennanmckenna.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 14, 2026, a copy of the foregoing was sent to counsel for the Government via ECF.

/s/
William C. Brennan, Jr.